# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UNITED CREDIT RECOVERY, LLC,**

      **Plaintiff,**

-vs-                                          **Case No. 6:11-cv-1714-Orl-31KRS**

**JASON BEXTEN; IMPERIAL
RECOVERY PARTNERS, LLC; I
RECOVERY LLC;
REGENT ASSET MANAGEMENT
SOLUTIONS; MICHAEL SCATA; ERIK
HAM; MIRANDA HAM; SHANE
SCHNEIDER; MICHAEL REEDS; JOSH
MILLER; and BART OWENS,**

      **Defendants.**

## ORDER

This cause comes before the Court on two Motions to Dismiss, (Doc. 48) filed by Defendants Erik Ham, Miranda Ham, Shane Schneider, Michael Reeds, Josh Miller, and Bart Owens (collectively the "Individual Defendants"); and (Doc. 57) filed by Defendant Michael Scata ("Scata"). Plaintiff has filed two responses (Docs. 59 and 62).

**I. Background**

Although the relationship between the parties is not entirely clear, the basic facts as the Court understands them are as follows. The parties are all involved, in one way or another, in the business of debt collection. The Plaintiff, United Credit Recovery ("UCR"), buys debts from the original creditors and then assigns it to debt collection agencies for collection, while retaining ownership of the debt. The Individual Defendants and Scata are (or were) employees or agents of one or more of

the Defendant entities, Imperial Recovery Partners, LLC ("Imperial"), and I Recovery, LLC ("I Recovery"). Each of these entities are debt collection agencies which were hired by UCR to collect debt.

Beginning in April, 2011, UCR's relationship with its debt collectors ran into trouble. Plaintiff alleges that Imperial "misappropriated $2 million of revenue" owed to UCR that it refused to pay after repeated demands. (Doc. 1, ¶ 35). Despite this blatant misdeed, UCR continued to use Imperial as a collection agent, but to recoup the loss it "would offset [Imperial's] commission against the $2 million." (Doc. 1, ¶ 36). Shortly thereafter, Imperial discovered a way to circumvent UCR's 'self-help' effort by using its software to "transfer UCR accounts" to its affiliate company, I Recovery. As a result, it appeared to UCR that I Recovery collected the debts instead of Imperial; thus, UCR paid I Recovery its usual commission on accounts which should have been subject to the offset.

After discovering this scheme in late September 2011, UCR decided to replace Imperial with World Recovery Service, LLC ("World Recovery")–also at about this time, Imperial went out of business. On Monday, October 3, 2011, World Recovery hired many of Imperial's old employees and began collecting on at least some of the same UCR-owned debts that Imperial had been collecting previously. Defendant Jason Bexten ("Bexten") had written the software that had been used by Imperial to operate its agency, which software was apparently utilized by World Recovery after the transition from Imperial. In mid-October, Bexten (with the help of several other Defendants) disabled World Recovery's access to his software. Apparently, this action had the effect of preventing UCR

and its affiliates almost entirely from doing business. With UCR disabled, Defendants then contacted UCR's "customers"[1] and fraudulently advised them to direct all future payments to Defendants.

On October 25, 2011, UCR filed the instant suit asserting eight causes of action against eleven defendants: breach of contract against Imperial (Count I); breach of contract against I Recovery (Count II); unjust enrichment against all Defendants (Count III); Conversion against all Defendants (Count IV); intentional interference with contractual relations against all Defendants (Count V); intentional interference with prospective economic advantage against all Defendants (Count VI); civil conspiracy against all Defendants (Count VII); and preliminary and permanent injunction against all Defendants (Count VIII).

The Individual Defendants and Scata now move to dismiss the Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), for failure to state a claim under Rule 12(b)(6), or in the alternative, move for a more definite statement under Rule 12(e).[2]

## II. Standards

### A. Motions to Dismiss for Lack of Personal Jurisdiction

A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the Complaint sufficient facts to make out a prima facie case of jurisdiction. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir.1999); *see also Polski Linie Oceaniczne v. Seasafe Transp. A/S,* 795 F.2d 968, 972 (11th Cir.1986) (describing procedure for

---

[1] The word "customers," although used in the Complaint, does not precisely describe the relationship here. Rather, these are debtors who were making regular payments to UCR pursuant to a payment plan.

[2] Because the arguments raised in both Motions are substantially the same, the Court will address them together.

plaintiff to establish personal jurisdiction under Florida's long-arm statute). Where a defendant challenges jurisdiction by submitting affidavits in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier v. Sun Int'l Hotels*, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002); *Posner*, 178 F.3d at 1214; *see also Polski Linie Oceaniczne*, 795 F.2d at 972.

To exercise personal jurisdiction over a defendant, the Court must determine whether the exercise of jurisdiction is: (1) specific or general; (2) appropriate under the state's long-arm statute; and (3) comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); *Stubbs v. Wyndham Nassau Resorts & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005); *see also Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989).

Specific jurisdiction is founded on a defendant's activities in the forum that are related to or arise out of the cause of action alleged in the complaint. *Stubbs*, 447 F.3d at 1360 n. 3 (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000)). If a defendant is subject to specific jurisdiction on one claim but not another, the Court may, in certain circumstances, exercise personal jurisdiction over the defendant as to both claims. 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1069.7 (3d ed. Supp. 2009). General jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated. *Stubbs*, 447 F.3d at 1360 n. 3 (citing *Meier*, 288 F.3d at 1269). If the defendant is subject to the general jurisdiction of the court, it must respond in that court to any claim in the complaint. *Id.*

The exercise of specific jurisdiction comports with due process if the defendant has certain "minimum contacts" with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation and citation omitted); *see also, e.g., Fraser v. Smith*, 594 F.3d 842, 845 (11th Cir. 2010). In assessing these contacts, the Court must determine whether the defendant purposefully availed itself of the privilege of conducting activities in Florida – or purposefully established contacts in Florida – and whether there is a sufficient nexus between those contacts and the litigation. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

The exercise of general jurisdiction is more exacting and will comport with due process only if the defendant's contacts with the forum are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414; *Sherritt, Inc.*, 216 F.3d at 1292; *see also Seabra v. Int'l Specialty Imports*, 869 So. 2d 732, 734 (Fla. 4th DCA 2004). In Florida, a defendant's contacts are "continuous and systematic" if the defendant has "engaged in substantial and not isolated activity" within the state. *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1275 n. 16 (11th Cir. 2009) (citing *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999)).

No exercise of jurisdiction, be it specific or general, may offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (quotation and citation omitted). Accordingly, the Court must determine whether the forum's interest in the dispute and the plaintiff's interest in obtaining relief are outweighed by the burden on the defendant of having to defend itself in a Florida court and the interests of the interstate judicial system. *World-WideVolkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008).

**B. Motions to Dismiss for Failure to State a Claim**

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see*, *e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009).

**III. Discussion**

   **A. Personal Jurisdiction**

The Complaint directs most of its allegations to Defendants generally. In response, each of the Individual Defendants and Scata submitted an affidavit in which they deny having any knowledge or involvement in any of the alleged misconduct. (*See* Docs. 48 & 57). As such, the burden shifts back to Plaintiff to produce evidence supporting jurisdiction. *Meier v. Sun Int'l Hotels*, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). Plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint. *See Dublin Co. v. Peninsular Supply Co.*, 309 So. 2d 207 (Fla. 4th DCA 1975).

   *1. Individual Defendants*

   Florida's long-arm statute provides as follows, in relevant part,

   (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
       (a)    Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
       (b)    Committing a tortious act within this state

FLA. STAT. § 48.193(1). Defendants argue that their alleged actions in this case do not satisfy Florida's long-arm statute because of the "corporate shield doctrine." Under the "corporate shield doctrine," the "acts of [a] corporate employee performed in [his] corporate capacity do not form the basis for jurisdiction over [the] corporate employee in his individual capacity." *Rensin v. State*, 18 So. 3d 572, 574 (Fla. 1st DCA 2009) (citing *Doe v. Thompson*, 620 So.2d 1004, 1006 (Fla. 1993)); *see also State v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 597 (Fla. 1st DCA 2004).

There is a notable exception to the corporate shield doctrine where a corporate agent is a "primary participant" in fraud or intentional misconduct "expressly aimed at the forum state." *Wyndham Int'l*, 869 So. 2d at 597 (citing *Doe*, 620 So.2d at 1006); *Rensin*, 18 So. 3d at 575. Jurisdiction is usually found under this exception where a plaintiff produces "evidence of the specific conduct on the part of the corporate officer that constituted a fraud or an intentional tort. In each case [where jurisdiction is found], the nonresident corporate officer personally and intentionally engaged in the tortious conduct and the specific conduct of the nonresident corporate officer was calculated to inflict a direct injury upon a resident of Florida." *Rensin*, 18 So. 3d at 575-76.[3]

The Complaint asserts four causes of action based on allegedly tortious conduct: conversion, intentional interference with contractual relations, intentional interference with prospective economic advantage, and civil conspiracy. A fair reading of the Compliant reveals that these causes of action can be based on any of the following alleged conduct: (1) misappropriating the $2 million owed to UCR by Imperial;[4] (2) contacting UCR's customers and improperly directing them to remit future

---

[3] Additionally, the Eleventh Circuit has held that § 48.193(b) of the Florida long-arm statute permits jurisdiction over a nonresident defendant who commits a tort outside of the state that causes injury inside the state. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir.1999) (adopting broad interpretation of long-arm statute by Florida courts that permits personal jurisdiction over nonresident defendant alleged to have committed a tort causing injury in Florida).

[4] Another possible act of misconduct involves downloading UCR's customer information. Perhaps as a result of the imprecise allegations in the Complaint, the Court fails to perceive (given the allegations before it) how this act is, by itself, tortious. Defendants were given access to UCR's customer information to facilitate their debt collection responsibilities. It was not until Defendants took the affirmative step of improperly contacting these customers and denying UCR access to its information that an intentional tort occurred.

payments to Defendants; or (3) blocking UCR's access to its customer information.[5] The burden is on UCR to show that the Individual Defendants and Scata were "primary participants" who "personally targeted intentional, wrongful acts at the State of Florida." *Rensin*, 18 So. 3d at 576.

(a). Erik Ham

Erik Ham is a resident of Nevada, "and is the current president of I Recovery." (Doc. 1, ¶ 7). His job includes overseeing the "day to day operations" of the company and purchasing "equipment for Jason Bexten and/or I Recovery." (Doc. 21-1). However, in the affidavit attached to the Motion Ham claims that he "did not knowingly participate in any of the alleged misconduct referenced in the Complaint." (Doc. 48-2, ¶ 12). In response Plaintiff cites to a November 2011 affidavit in which Ham admitted to purchasing 100 computers for an I Recovery facility in Florida. Before shipping them to Florida, he installed the operating systems and the collection software "that belongs to Bexten," on each computer. He then flew to Florida to verify that the computers were set up properly and were connected to "Bexten's database in Kansas City." (Doc. 21-1).

Plaintiff claims that these computer systems where used to convert its customer information and lock its access to the system. Further, it claims that Ham "knew that the consequences of disabling access to the software would cause injury to UCR in Florida." (Doc. 59 at 9). There is no evidence however that Ham was personally, let alone primarily, involved in disabling UCR's access to its customer files. He merely purchased the computers and installed them at a facility in Florida. Even assuming that he "knew the consequences of disabling access to the software," such knowledge is

---

[5] As far as the Court can tell, this "information" comes in two forms: (1) information relating to the customers that had previously been contacted by UCR or one of its affiliates and were making regular payments to UCR; and (2) information obtained from an original creditor relating to a debtor that had not yet been contacted by UCR or its affiliates.

irrelevant in the context of Florida's long-arm statute unless he was a "primary participant" in the alleged misconduct. While it is conceivable that Ham personally directed the alleged tortious acts, there are no allegations or evidence to support such an inference. Therefore, Plaintiff has failed to provide sufficient evidence to sustain its burden as to Erik Ham.

(b). Miranda Ham

Miranda Ham is also a resident of Nevada, and "is the office manager of I Recovery." (Doc. 1, ¶ 8). Other than the general allegations in the Complaint, Plaintiff has provided no evidence and made no allegations to establish that Miranda Ham was involved in any of the alleged misconduct. It is required to allege, at a minimum, that she was a "primary participant." *Rensin*, 18 So. 3d at 575. Even assuming that UCR met its initial burden, it provides no evidence to rebut the affidavit submitted in support of the Motion, and no evidence of any "specific conduct . . . that constituted a fraud or an intentional tort" on the part of Miranda Ham. *Id*.[6] Rather, it relies solely on Ham's statement that she "is in charge of the day to day operations" of I Recovery. (Doc. 59 at 11). Since she has specifically denied any involvement, and Plaintiff provides no other evidence of her participation in the alleged conduct, the Court finds that it is unable to exercise jurisdiction over Miranda Ham.

(c). Shane Schneider

Shane Schneider is a resident of Kansas and "is a computer programmer for Imperial Recovery and I Recovery." (Doc. 1, ¶ 9). In his affidavit he denies any personal involvement in the alleged

---

[6] UCR points out that the affidavits of the Individual Defendants are "virtually identical" and as such, fail to meet the burden required to sustain a motion to dismiss. (Doc. 59 at 10). While this may be true, the allegations in the Complaint against each of the Individual Defendants are likewise "virtually identical." UCR cannot, on the one hand, claim that Defendants' affidavits are too general to meet their burden, and on the other, claim it sustained its burden when virtually all of the allegations in the Complaint are directed to "Defendants" generally.

misconduct. UCR cites to several affidavits which suggest that Schneider, (1) was the "primary contact for the software platform support," (2) one of the "primary programmers and developers" (along with Bexten) of the software system, and (3) that he "directly downloaded the UCR customer account information and removed it from UCR's server so that it could not access its business records to transact business." (Doc. 59 at 10).[7]

As far as the Court can tell, no Florida court has ever subjected an employee to jurisdiction for such conduct. The corporate shield doctrine typically applies to shield an employee unless the he is a high level officer, or is engaged in inherently tortious conduct–such as defamation. *See, e.g., Rensin*, 18 So. 3d at 575-76 (CEO of corporation not subject to personal jurisdiction for violation of FDUTPA because his affidavit squarely denies allegations of directing the alleged tortious conduct and plaintiff provided no counter-affidavits); *Wyndham Int'l*, 869 So. 2d at 599 (CEO and regional director not subject to personal jurisdiction for violations of the FDUTPA because not involved in the implementation of the tortious scheme); *Byron v. Marine Carriers (USA), Inc.*, 668 So.2d 273 (Fla. 1st DCA 1996) (president of corporation subject to personal jurisdiction for defamatory statements made about the plaintiff to a Florida resident).

Schneider is not an officer or principle in any of these corporations, and his conduct in this case is relatively innocuous. Both Imperial and I Recovery had the right to access this customer data, and Bexten had a contractual right to shut down access to his database. Further, the evidence suggests

---

[7] UCR asserts that downloading its customer information and blocking its access to its business records is an intentional tort; but given the evidence before the Court, this appears to be a contract dispute. Bexten (the owner of the software), shut down access only after Imperial (and/or World Recovery) breached the "Operating and Mutual Relationship Contract." (Doc. 13-1, ¶¶ 17-18). Under these circumstances, the Court cannot say that Schneider's acts constituted an intentional tort calculated to inflict a direct injury upon a resident of Florida. *Rensin*, 18 So. 3d at 575-76.

that Schneider was merely doing as he was directed by Bexten. (*See* Doc. 13-1, ¶¶ 17-18). Accordingly, UCR has not shown that Schneider was a primary participant who personally targeted intentional, wrongful acts at Florida.[8]

(d). Michael Reeds

Michael Reeds is a resident of Nevada, and is also a computer programmer for Imperial and I Recovery. (Doc. 1, ¶ 10). His affidavit is virtually identical to Schneider's–in that he denies everything. UCR responds by citing to his prior affidavit, along with a transcript from a hearing before this Court. Specifically, it claims that Reeds flew to Florida to install Bexten's software at a a Florida facility, and that he also disabled administrative access to the software to ensure that UCR and its affiliate could not access customer information. (Doc. 59 at 9).

A single visit to Florida to install computer software (which was presumably a normal part of his job) is not significant–especially since there is no evidence that this visit had anything to do with

---

[8] Even assuming that Schneider's conduct constitutes an intentional tort, the Court cannot say that Schneider's conduct was "calculated to inflict a direct injury upon a resident of Florida" because there is no evidence that he was involved in the decision (if any) to block UCR's access to its records. *Rensin*, 18 So. 3d at 575-76. *Cf.*, *Calder v. Jones*, 465 U.S. 783, 789-90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (finding jurisdiction appropriate over a non-resident editor and reporter for an article which defamed a California resident, noting that "their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. . . . Under the circumstances, petitioners must reasonably anticipate being haled into court there to answer for the truth of the statements made in their article." (citation omitted)). Additionally, Schneider's connection with Florida is not sufficient to satisfy the requirements of due process. Under these circumstances, Schneider could not have reasonably anticipated being haled into court in Florida. *Calder*, 465 U.S. at 789-90, 104 S.Ct. 1482.

his allegedly tortious conduct.[9] Accordingly, and for the same reasons as Schneider, the Court finds that it may not properly exercise jurisdiction over Reeds.

    (e). Josh Miller

Josh Miller is a Nevada resident and "is the manager of I Recovery's vending machines." (Doc. 1, ¶ 12). In his affidavit Miller denies any knowledge of, or any involvement in, the alleged misconduct. The only evidence provided by Plaintiff in regards to Miller is that he "was discovered by UCR to have posted $1 million in payment plans owed to UCR." (Doc. 3-1, ¶ 18). This is merely a reiteration of an allegation made in the Complaint. *See Dublin Co. v. Peninsular Supply Co.*, 309 So. 2d 207 (Fla. 4th DCA 1975). UCR also cites to an affidavit supporting the claim, but this single quote combined with the overly general allegations in the Complaint are not enough to exercise jurisdiction over Miller. *Rensin*, 18 So. 3d at 575-76. Assuming, *arguendo*, that "post[ing] $1 million in payment plans owed to UCR" constitutes an intentional tort, there is no evidence to suggest that Miller was a "primary participant," that the conduct was intentional, or that it was "expressly aimed" at UCR in Florida.

    (f). Bart Owens

Bart Owens is a Nevada resident, and is "I Recovery's collection manager." (Doc. 1, ¶ 11). The sum total of Plaintiff's evidence as to Owens suggests that he, similar to Schneider, "directly downloaded the UCR customer account information and removed it from UCR's server so that it could not access its business records to transact business." (Doc. 59 at 10). For the same reasons as Schneider and Reeds, the Court may not properly exercise personal jurisdiction over Owens.

---

[9] UCR does not allege that Reeds actually disabled its access to customer records while in Florida.

*2. Michael Scata*

Michael Scata is resident of Colorado, a principle of Imperial, and "participates in the daily operations" of I Recovery. (Doc. 1, ¶¶ 5, 27). Plaintiff cites to evidence suggesting that he was personally involved in the misappropriation of money owed to UCR. (*See, e.g.,* Doc. 62 at ¶¶ 7-8). Scata's alleged conduct is materially different from that of the Individual Defendants. Plaintiff cites to affidavits which suggest that, (1) he is a high level officer in each of the Defendant entities, (2) he was a primary participant in intentionally misappropriating money owed to UCR in Florida, and (3) he personally benefitted from the misappropriation. Accordingly, the Court finds that this evidence is sufficient to establish jurisdiction under Florida's long-arm statute.

Personal jurisdiction over Scata must also comport with due process. The parties concede that the Court lacks general jurisdiction over Scata, thus the cause of action must arise out of his contacts with Florida. *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414; *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010). "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Intentional torts are such acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum. *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

Plaintiff argues that Scata committed intentional torts "calculated to inflict a direct injury upon a resident of Florida." *Rensin*, 18 So. 3d at 575-76. In this context, courts apply the *Calder* test for personal jurisdiction, requiring that a tort was (1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state. *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008); *see also Calder v. Jones*, 465 U.S.

783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Acts expressly aimed by the defendant at an individual in the forum may result in personal jurisdiction over the defendant, but mere untargeted action or a fortuitous result will not. *Calder*, 465 U.S. at 788-90, 104 S.Ct. 1482.[10]

UCR presents evidence to suggest that Scata was (1) a principle and owner of Imperial and Regent, along with Bexten (*See* Doc. 62, ¶ 6); (2) that he was responsible for misappropriating the $2 million owed to UCR (*See* Doc. 62, ¶ 8); and (3) that he personally benefitted from the misappropriation. (*See* Doc. 62 at 9). Given his position as owner of Imperial, and his extensive dealings with UCR, this is sufficient to establish minimum contacts with Florida. *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008); *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (noting that where supporting evidence conflicts, the court must construe all reasonable inferences in favor of the plaintiff).

Having established that Scata has constitutionally sufficient contact with Florida, the Court must ascertain whether the exercise of jurisdiction over him comports with fair play and substantial justice. *Licciardello*, 544 F.3d at 1288. Relevant factors include the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial systems interest in resolving the dispute. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Florida has a "very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Licciardello*, 544 F.3d at 1288

---

[10] The Court has already found that it cannot properly exercise jurisdiction over the Individual Defendants under Florida's long-arm statute. Even if jurisdiction under the long-arm statute was proper, the Court also finds that the Individual Defendants lack sufficient minimum contacts under *Calder*.

(citing *Allerton v. State Department of Insurance*, 635 So.2d 36, 40 (Fla. 1st DCA 1994)). Asserting jurisdiction over non-resident tort feasors does not offend traditional notions of fair play and substantial justice. *Calder*, 465 U.S. at 791.

**B. Motion to Dismiss Pursuant to Rule 12(b)(6)**

Scata moves to dismiss each claim on the basis that there are insufficient "specific factual allegations" as to his conduct. The federal rules of civil procedure require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing FED. R. CIV. P. 8(a)). While the allegations must be sufficient to "raise a right to relief above the speculative level," *Bell Atlantic Corp.*, 550 U.S. at 555, and cross "the line from conceivable to plausible," *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009), "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [a court] presum[es] that general allegations embrace those specific facts that are necessary to support the claim." *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1286 (11th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992) (citation omitted)). Accordingly, the Court finds that the allegations in the Complaint are sufficient to survive a motion to dismiss.[11]

In light of the foregoing, it is **ORDERED** that Defendants Erik Ham, Miranda Ham, Shane Schneider, Michael Reeds, Josh Miller, and Bart Owen's Motion to Dismiss (Doc. 48) is **GRANTED**. Defendant Michael Scata's Motion to Dismiss (Doc. 57), is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 7, 2012.

---

[11] The Court will also deny Scata's motion for a more definite statement. The Complaint is not "so vague or ambiguous that [Scata] cannot reasonably prepare a response." FED. R. CIV. P. 12(e).

Copies furnished to:

Counsel of Record
Unrepresented Party

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE