## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

UNITED CREDIT RECOVERY, LLC,

        Plaintiff/Counterclaim
        Defendant,

-vs-                                 Case No.  6:11-cv-1714-Orl-31KRS

JASON BEXTEN; IMPERIAL
RECOVERY PARTNERS, LLC; I
RECOVERY LLC;
REGENT ASSET MANAGEMENT
SOLUTIONS; MICHAEL SCATA; ERIC
HAM; SHANE SCHNEIDER; MICHAEL
REEDS; JOSH MILLER; and BART
OWENS,

        Defendants/Counterclaim
        Plaintiffs,

-vs-

LEONARD POTILLO, WORLD
RECOVERY SERVICE, LLC, and
MICHAEL NEWKIRK,

        Third Party Defendants.

_____

## ORDER

     This matter comes before the Court on the Motion to Dismiss Counts I, IV-VIII of the

Amended Counterclaim (Doc. 107) filed by the Counterclaim Defendant, United Credit Recovery,

LLC ("UCR"), and the Motion to Dismiss the Amended Third Party Complaint (Doc. 108) filed by

the Third Party Defendants – Leonard Potillo ("Potillo"), World Recovery Service, LLC ("World

Recovery"), and Michael Newkirk ("Newkirk") – as well as the responses (Doc. 109, 110) to those motions.

I.      **Background**

The instant dispute involves a falling out among debt collectors.  UCR buys debts from the original creditors and then assigns it to debt collection agencies, while retaining ownership of the debt.  Defendants Jason Bexten ("Bexten") and Michael Scata ("Scata") were principals in a number of such agencies – including Defendant Imperial Recovery Partners, LLC ("Imperial") – with Bexten providing dialing and data management software and hardware and Scata running the business.  Pursuant to a February 2011 written contract between Bexten and Imperial (the "Bexten-Imperial Contract"), Bexten and Scata both held 50 percent ownership interests in Imperial, but Scata alone controlled day-to-day operations.

According to the allegations of the Amended Counterclaim, which are accepted as true for purposes of resolving the instant motion to dismiss (and which are incorporated into the Amended Third Party Complaint), the relationship between UCR and Imperial ran into trouble in early 2011. In May 2011, UCR and its principal, Potillo, forced Scata to turn over his interest in Imperial to UCR, which began to operate the business.  In September 2011, UCR closed Imperial and opened a new entity – World Recovery.  World Recovery operated at a different address than Imperial, but the employees, equipment, and work were the same as they had been at Imperial.  Bexten believed that World Recovery was Imperial's successor and that, per his contract with Imperial, he was entitled to a 50 percent interest in World Recovery.  Potillo refused to provide Bexten with an interest in World Recovery.  Upon this refusal, and purportedly in conformity with his rights under the Bexten-Imperial contract, Bexten terminated World Recovery's ability (and UCR's ability) to

use the equipment and software he had provided, rendering those entities unable to make any debt collections.  Bexten, again pursuant to a clause in the Imperial contract, began collecting on UCR's accounts for his own benefit, to pay off sums allegedly owed to him by Imperial.

On October 25, 2011, approximately two weeks after Bexten terminated World Recovery's use of the equipment and software, UCR filed the instant suit, along with a motion for a temporary restraining order to restore its ability to collect on its accounts and to bar Bexten from continuing to do so.  (Doc. 1, 3).  The TRO issued the same day.  (Doc. 6).  On November 4, 2011, partway through a hearing on the TRO, the parties entered into settlement that resulted in its dissolution and allowed the parties to resume their (now separate) debt collection activities.  On May 8, 2012, UCR filed an amended complaint (Doc. 100), which was answered on May 22, 2012.  (Doc. 105). The answer contained counterclaims and third-party claims, which are the subject of the instant motions.

## II.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 35 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984).  In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.  *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988).  The Court

must also limit its consideration to the pleadings and any exhibits attached thereto.  FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir.2007).  Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 1949 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    Analysis

### A.    Counterclaim

#### 1.    Count One – Breach of Contract (Bexten vs. UCR)

Much of the Counterclaim arises from Bexten's assertion that UCR succeeded to Scata's ownership interest in Imperial and took over its day-to-day operations.  In Count I of the Counterclaim, Bexten asserts that after the takeover, UCR breached the Bexten-Imperial Contract by failing to make payments to him, by failing to provide him with an ownership interest in World

Recovery, and by diminishing Imperial's enterprise value.  UCR counters that it was not a party to

the Bexten-Imperial Contract and therefore could not have breached it.  Bexten responds that UCR

can be held liable pursuant to Fla. Stat. § 608.4228, which sets forth the circumstances under

which a manager or managing member of an LLC can be held personally responsible for monetary

damages to the limited liability company.  But in Count I, Bexten is seeking to recover for

damages incurred by him due to a contractual breach, not damage to Imperial resulting from UCR

taking improper personal benefits, violating criminal law or otherwise bringing itself within

Section 608.4228.[1]  Count I of the Counterclaim will be dismissed.

### 2.      Count IV – Conversion (Bexten vs. UCR)

In this count, Bexten complains that, as a result of its assumption of control over Imperial,

UCR took possession and control of "certain systems, computers, and equipment belonging to

Bexten".  (Doc. 105 at 23).  Bexten alleges that he has demanded that these items be returned, but

UCR has refused to do so.  UCR argues that Bexten never lost access to his equipment and

software, because he used those items to collect on UCR's accounts until the TRO issued in this

case.  Even assuming UCR's assertion to be true, it does not address all of the items Bexten alleges

to have been converted, such as computer hardware that allegedly remains in UCR's possession.

Count IV will not be dismissed.

-----

[1]Bexten also cites to the Florida statute that extends the doctrine of corporate veil-piercing to
LLCs – Fla. Stat. § 608.701 – but there are no allegations that would support veil piercing in regard
to the Bexten-Imperial contract.

### 3.     Count V – Fraud (Regent vs. UCR)

According to the allegations of Count IV, Regent Asset Management Solutions ("Regent") purchased debt from UCR three times in 2008.  Regent was a debt collection agency "owned and/or controlled" by Scata, and Bexten was a consultant to the agency.  (Doc. 105 at 14).  Regent alleges that UCR had purchased the debt at issue from US Bank and that a representative of US Bank had informed UCR that the debt was "zero-agency" debt – *i.e.*, that no debt collector had previously attempted to collect on the debt.  UCR then represented to Regent that the debt was zero-agency debt.  According to Regent, UCR knew that the debt was actually one-, two- or three-agency debt, which is much less valuable than zero-agency debt.

Rule 9(b) requires that parties must state with particularity the circumstances constituting fraud.  The vague allegations in Count V do not meet this standard.  Among other problems, there is no indication as to who it was at UCR that made the misrepresentation(s), who at Regent received the misrepresentation(s) and when, or how anyone at UCR discovered that the US Bank representative had lied about the status of the debt.[2]  Count V will be dismissed.

### 4.     Count VI – Unjust Enrichment (Imperial vs. UCR)

Imperial claims, in Count VI, that it was entitled to receive a commission of between 30 percent to 40 percent for all of the UCR debt it collected, which UCR failed to pay after taking over Scata's interest in Imperial.  Imperial contends that UCR would be unjustly enriched if it were to retain the benefit of Imperial's services without having to pay the required percentage.

---

[2]UCR also alleges that the claim is barred by the plain language of the contract for the sale of the debt, by the pertinent statute of limitations, and by the economic loss rule, as well as having been brought in the wrong venue.  Because the Court finds that Regent has not satisfied Rule 9(b), it does not reach these other points.

UCR responds that this assertion of an unjust enrichment claim is inconsistent with Imperial's allegation that it had a contract entitling it to receive a commission on the UCR debt it collected. The law will not imply a contract where a valid express contract exists. *Solutec Corp. v. Young & Lawrence Associates, Inc.*, 243 So. 2d 605 (Fla. 4th DCA 1971). And although Imperial has not sued on a contract (and in fact never explicitly refers to a contract between itself and UCR), the existence of such an agreement is certainly implied by Imperial's allegations regarding an entitlement to commissions from UCR. Regardless, Federal Rule 8(e)(2) permits pleading in the alternative and pleading of inconsistent claims, and therefore the fact that the allegations in this count might be inconsistent with other allegations in the counterclaim is not enough, on its own, to require dismissal.

### 5. Count VII – Breach of Fiduciary Duty (Imperial and Scata vs. UCR)

Count VII consists of a claim by Imperial and Scata that, after taking over Scata's interest and becoming operational manager of Imperial, UCR had a duty to pay Imperial's debts, to operate the company for the benefit of all members, and to abide by the duties of loyalty, care, and fair dealings. Imperial and Scata contend that UCR breached "this duty" – never specifying which one – by failing to transmit funds to Imperial to pay its debts, by failing to pay Scata (in his capacity as a creditor of Imperial), by collecting and using for itself funds collected on behalf of Imperial, and by depriving Imperial's members of information about the company's books and records.

The source of these alleged obligations is not identified in Count VII itself. In their response to the instant motion, Imperial and Scata point to Fla. Stat. § 608.4225 as the source. Section 608.4225 sets general standards for managers and managing members of LLCs. The statute does impose duties on managers and managing members – duties of care and loyalty rather

than the more general fiduciary duty that Imperial and Scata apparently seek to enforce here.

However, the duties imposed by Section 608.4225 are owed to the LLC and its members.  Scata is

neither, and his claim will be dismissed.  In addition, the duty of care imposed by Section

608.4225 "is limited to refraining from engaging in grossly negligent or reckless conduct,

intentional misconduct, or a knowing violation of the law," none of which have been alleged here.

The duty of loyalty imposed by this section is limited to

> 1.  Accounting to the limited liability company and holding as trustee for the limited liability company any property, profit, or benefit derived by such manager or managing member in the conduct or winding up of the limited liability company business or derived from a use by such manager or managing member of limited liability company property, including the appropriation of a limited liability company opportunity.

> 2.  Refraining from dealing with the limited liability company in the conduct or winding up of the limited liability company business as or on behalf of a party having an interest adverse to the limited liability company.

> 3.  Refraining from competing with the limited liability company in the conduct of the limited liability company business before the dissolution of the limited liability company.

Fla. Stat. § 608.4225(1)(a).  Of these three subcategories, only the first is conceivably implicated

by the allegations set forth in the counterclaim.  Imperial does allege that UCR kept funds

collected on behalf of Imperial, which at least in theory could run afoul of a manager's obligation

under Fla. Stat. § 608.4225(1)(a)(1) to "hold[] as trustee for the limited liability company any

property, profit, or benefit derived by such manager or managing member in the conduct ... of the

limited liability company."  Other than this one alleged breach of the duty of loyalty, Imperial's

claim in this count will also be dismissed.

**B.     Third Party Claim**

**1.**     Michael Newkirk

Third Party Defendant Newkirk seeks dismissal on the grounds that, although named as a party in the Third Party Complaint, no claims were actually asserted against him in that document. In their response to the instant motion, the Third Party Plaintiffs do not dispute Newkirk's contention, or even mention his name.  Accordingly, Newkirk will be dismissed as a party to the instant suit.

**2.     Count I – Tortious Interference With Contractual Right (Bexten vs. Potillo)**

In this count, Bexten asserts a claim for tortious interference against Potillo for interfering with the Bexten-Imperial contract.  While the Amended Counterclaim is based in large part on the contention that UCR succeeded to Scata's interest in Imperial, Count I of the Amended Third Party Complaint takes a different tack.  It is based on the notion that UCR did *not* succeed to that interest, and that therefore Potillo never became a party to or had an interest in the Imperial-Bexten Contract.

Under Florida law, stating a claim for tortious interference requires, among other things, an allegation of intentional and unjustified interference by the defendant.  *See, e.g.*, *W.D. Sales and Brokerage LLC v. Barnhill's Buffet of Tenn., Inc.*, 362 Fed. Appx. 142, 143 (11th Cir. 2010) (applying Florida law).  For the interference to be unjustified, the interfering defendant must be a stranger to the business relationship, and a defendant is not a stranger where it had any beneficial or economic interest in the relationship.  *Id.* at 143 (citations omitted).  In Count I itself, Bexten alleges that between April 2011 and September 2011, "all collections and payments received from the collection efforts of Imperial were paid directly to UCR and/or its affiliates, at the direction of

Potillo," and that subsequently UCR and its affiliates refused to pay Imperial the commissions it earned, "at the direction of Potillo," thereby causing Imperial to breach its contract with Bexten. (Doc. 104 at 33-34).  Bexten cannot assert that Potillo controlled Imperial, causing it to pay UCR rather than Bexten, while simultaneously arguing that Potillo was a stranger to the Imperial-Bexten relationship.  Bexten has failed to state a claim for tortious interference, and Count I will therefore be dismissed.

### 3.    Count II – Breach of Contract (Bexten vs. World Recovery)

Arguing that World Recovery is Imperial's successor in interest, Bexten in Count II asserts a claim against World Recovery for breach of the Bexten-Imperial Contract.  World Recovery argues that Florida law does not impose a corporate predecessor's liabilities upon a successor except under limited circumstances.  In particular, those liabilities are imposed upon a successor where

> (1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor.

*Bernard v. Kee Mfg. Co. Inc.*, 409 So. 2d 1047, 1049 (Fla. 1982).  However, in Count II, Bexten asserts that World Recovery is "a mere continuation" of Imperial.  Accordingly, Bexten has stated a claim for successor liability against World Recovery on the Imperial-Bexten Contract.  Count II will not be dismissed.

### 4.    Count III – Breach of Implied-in-Fact Contract (Bexten vs. World Recovery)

In Count III, Bexten asserts that, regardless of whether World Recovery is merely Imperial's successor, the company agreed to continue using his software and hardware and paying

him for it under the same terms as the Bexten-Imperial Contract.  World Recovery argues that the allegations are insufficiently specific, that they contradict the allegations of the Amended Counterclaim, and that the agreement would violate Florida's Statute of Frauds.  The Court finds no merit in any of these arguments.  Reference to the Bexten-Imperial Contract provides sufficient specificity as to the terms of the implied contract.  And the Court sees no fatal inconsistency between the allegations of the Amended Counterclaim and those set forth in this count (which, in any event, is clearly pled in the alternative, as permitted by the Federal Rules of Civil Procedure).  Finally, despite World Recovery's argument to the contrary, it does not appear that the alleged implied-in-fact contract was to have been performed more than one year from its creation, and therefore the Statute of Frauds would not apply to it.   Count III will not be dismissed.

   **5.     Count IV – Unjust Enrichment (Bexten vs. World Recovery)**

   Bexten argues that, if World Recovery was not contractually obligated, allowing the company to use his equipment and software without paying for it would result in unjust enrichment.  World Recovery again argues that the allegations are insufficiently specific and contradicted by the allegations of the Amended Counterclaim.  Again, the Court finds no merit in these arguments.  Count IV will not be dismissed.

   **6.     Count V – Conversion (Bexten vs. World Recovery)**

   Similar to the allegations he made in Count IV of the Amended Counterclaim against UCR, Bexten argues that World Recovery gained possession of his software and equipment and converted them to its own benefit.  World Recovery makes the same argument in favor of dismissal that UCR made, and the argument fails for the same reason.  Count V will not be dismissed.

7.     **Count VI – Fraud (Regent vs. Potillo)**

Count VI (incorrectly denominated as a second Count V in the Amended Third Party

Complaint) reiterates the allegations of the fraud count of the Amended Counterclaim.

Specifically, Regent alleges that it bought debt from UCR on three occasions in 2008, that the debt

was represented to be zero-agency debt but had actually been collected on by one to three agencies,

and that Potillo knew this.  The allegations are vague and confusing.  There are bewildering

references to a Wilbur Tate ("Tate"), a representative of US Bank, from which UCR purportedly

bought the debt it then sold to Regent.  Tate allegedly misrepresented the status of the debt, but so

far as the Court can tell, he is alleged to have done so to UCR, not to Regent.[3]  If anything, this

would seem to exonerate UCR from a charge of defrauding Regent, rather than supporting such an

allegation.  There is no allegation as to how Potillo discovered the "true" status of the debt or to

whom he misrepresented that status or when he did so.  There are sentences in the count that seem

to suggest that Regent was aware of the true status of the debt at the time the purchases were

made.[4]  And there are more problems besides.  In any event, these allegations are too vague to

satisfy Rule 9(b).  Count VI will be dismissed.

---

[3]"UCR had purchased this debt from US Bank, which made a representation **to UCR** of what agency rating the debt is currently categorized under. ...  Wilbur Tate, a US Bank representative, fraudulently represented that the debt US Bank was selling was zero agency, when he in fact had personal knowledge of its status as one or two agency debt."  (Doc. 105 at 40) (emphasis added).

[4]"Potillo then represented to Regent that the debt **they** were purchasing was zero agency debt, although **they** had knowledge that the debt was in fact one, two, or three agency debt."  (Doc. 105 at 40) (emphasis added).  Perhaps"they" was intended to refer to Potillo.  The Court also notes that this characterization of the debt as "one, two, or three agency debt" is inexplicably inconsistent with the allegation (on the same page) that Tate "had personal knowledge of [the debt's] status as one or two agency debt."  (Doc. 105 at 40).

      **8.**      **Count VII – Defamation (I Recovery vs. World Recovery)**

Defendant I Recovery LLC ("I Recovery") is another debt collection agency in which Bexten is a principal.  In this count (incorrectly denominated Count VI), I Recovery contends that at least one World Recovery employee defamed it by telling a customer that I Recovery had taken money from her account without authorization and was being investigated for theft.  World Recovery raises several arguments in favor of dismissal, but upon review the Court finds that they do not merit discussion.  Count VII will not be dismissed.

**IV.**      **Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that the Motion to Dismiss Counts I, IV-VIII of the Amended Counterclaim (Doc. 107) and the Motion to Dismiss the Amended Third Party Complaint (Doc. 108) are **GRANTED IN PART AND DENIED IN PART**.  Count I and Count V of the Amended Counterclaim are **DISMISSED WITHOUT PREJUDICE**.  All of the claims in Count VII of the Amended Counterclaim other than the single alleged breach of the duty of loyalty referenced above are **DISMISSED WITH PREJUDICE**.  All claims against Michael Newkirk are **DISMISSED WITH PREJUDICE**.  Counts I and VI of the Amended Third Party

Complaint are **DISMISSED WITHOUT PREJUDICE**.  In all other respects, the motions are

**DENIED**.

      **DONE** and **ORDERED** in Chambers, Orlando, Florida on September 5, 2012.

                                     **GREGORY A. PRESNELL**
                                 **UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party

-14-