# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UNITED CREDIT RECOVERY, LLC,**

    **Plaintiff,**

**v.**                                                                             **Case No:  6:11-cv-1714-Orl-31KRS**

**JASON BEXTEN, IMPERIAL RECOVERY
PARTNERS, LLC, I RECOVERY LLC,
REGENT ASSET MANAGEMENT
SOLUTIONS, MICHAEL SCATA, ERIC HAM,
SHANE SCHNEIDER, MICHAEL REEDS,
JOSH MILLER, BART OWENS,**

    **Defendants.**

## ORDER

This matter comes before the Court without a hearing on the Motion to Dismiss (Doc. 162) filed by Defendant Shane Schneider ("Schneider"), the response in opposition (Doc. 163) filed by the Plaintiff, United Credit Recovery, LLC ("UCR"), and the reply (Doc. 168) filed by Schneider. Schneider contends that this Court lacks personal jurisdiction over him and that UCR has failed to state a claim against him.

### I.     Background

The instant dispute involves a falling out among debt collectors. The relationships and disputes at issue here are difficult to summarize. But, briefly stated, the situation is as follows: UCR buys debts from the original creditors and then assigns it to debt collection agencies, while retaining ownership of the debt. Defendant Jason Bexten ("Bexten") was a principal in a number of such agencies – including Defendant I Recovery, LLC ("I Recovery") -- providing dialing and

data management software and hardware.  I Recovery is a Nevada LLC and Bexten is a Nevada resident.  Schneider, a Kansas resident, was a computer programmer for some of the agencies with which Bexten was associated.  In October 2011, after a falling-out between Bexten and UCR, the ability of UCR and one of its collections agencies, World Recovery Service LLC ("World Recovery"), to use certain equipment and software was terminated.  This rendered UCR temporarily unable to access its customer data and to make any debt collections.  Bexten also began to have I Recovery collect on UCR's accounts for Bexten's own benefit, to pay off sums allegedly owed to him by Defendant Imperial Recovery Partners LLC ("Imperial Recovery"), a collections agency allegedly taken over by UCR.

On October 25, 2011, approximately two weeks after UCR's access to its customer data was terminated, UCR filed the instant suit.  UCR also filed a motion for a temporary restraining order to restore its ability to collect on its accounts and to bar Bexten from continuing to do so.  (Doc. 1, 3).  The TRO issued the same day.  (Doc. 6).  On November 4, 2011, partway through a hearing on the TRO, the parties entered into a settlement that resulted in its dissolution and allowed the parties to resume their (now separate) debt collection activities.  On May 8, 2012, UCR filed an amended complaint (Doc. 100).  On August 9, 2012, Schneider sought dismissal on the grounds that the Court lacked jurisdiction over his person.  (Doc. 122).  On October 18, 2012, the Court granted Schneider's motion and gave UCR "one final opportunity to demonstrate that Schneider is subject to jurisdiction in the courts of this state."  (Doc. 143 at 8).

UCR sought to take advantage of that opportunity, filing a Second Amended Complaint (Doc. 145) on November 2, 2012.  In it, UCR asserts the following claims against Schneider: intentional interference with contractual relations (Count V); conspiracy (Count VII); and violations of the Computer Fraud and Abuse Act (Count VIII).

## II.     Legal Standards

**Motions to Dismiss for Lack of Personal Jurisdiction**

A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the Complaint sufficient facts to make out a prima facie case of jurisdiction. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir.1999); see also *Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir.1986) (describing procedure for plaintiff to establish personal jurisdiction under Florida's long-arm statute). Where a defendant challenges jurisdiction by submitting affidavits in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *Posner*, 178 F.3d at 1214; see also *Polski Linie Oceaniczne*, 795 F.2d at 972.

To exercise personal jurisdiction over a defendant, the Court must determine whether the exercise of jurisdiction is: (1) specific or general; (2) appropriate under the state's long-arm statute; and (3) comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); *Stubbs v. Wyndham Nassau Resorts & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005); *see also Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989).

Specific jurisdiction is founded on a defendant's activities in the forum that are related to or arise out of the cause of action alleged in the complaint. *Stubbs*, 447 F.3d at 1360 n. 3 (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000)). If a defendant is subject to specific jurisdiction on one claim but not another, the Court may, in certain circumstances, exercise personal jurisdiction over the defendant as to both claims. 4A CHARLES

ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1069.7 (3d ed. Supp. 2009). General jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated. *Stubbs*, 447 F.3d at 1360 n. 3 (citing *Meier*, 288 F.3d at 1269). If the defendant is subject to the general jurisdiction of the court, it must respond in that court to any claim in the complaint. Id.

The exercise of specific jurisdiction comports with due process if the defendant has certain "minimum contacts" with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation and citation omitted); *see also, e.g., Fraser v. Smith*, 594 F.3d 842, 845 (11th Cir. 2010). In assessing these contacts, the Court must determine whether the defendant purposefully availed itself of the privilege of conducting activities in Florida – or purposefully established contacts in Florida – and whether there is a sufficient nexus between those contacts and the litigation. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

The exercise of general jurisdiction is more exacting and will comport with due process only if the defendant's contacts with the forum are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414; *Sherritt, Inc.*, 216 F.3d at 1292; *see also Seabra v. Int'l Specialty Imports*, 869 So. 2d 732, 734 (Fla. 4th DCA 2004). In Florida, a defendant's contacts are "continuous and systematic" if the defendant has "engaged in substantial and not isolated activity" within the state. *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1275 n. 16 (11th Cir. 2009) (citing *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999)).

No exercise of jurisdiction, be it specific or general, may offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (quotation and citation omitted). Accordingly, the Court must determine whether the forum's interest in the dispute and the

plaintiff's interest in obtaining relief are outweighed by the burden on the defendant of having to defend itself in a Florida court and the interests of the interstate judicial system. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008).

### III. Analysis

UCR does not assert that Schneider is subject to general jurisdiction. Accordingly, the Court must determine whether Schneider's activities in the state of Florida, related to or arising out of the causes of action alleged in the Second Amended Complaint, support an exercise of specific jurisdiction over him.

UCR contends that Schneider is subject to specific jurisdiction under both of the following provisions of the Florida long-arm statute:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> (b) Committing a tortious act within this state

Fla. Stat. § 48.193(1).

To establish personal jurisdiction under Fla. Stat. § 48.193, UCR must first either plead the language of the pertinent subsection without supporting facts or allege specific facts indicating that Schneider's actions fit within the subsection. *State, Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 596 (Fla. Dist. Ct. App. 2004). In its response to the instant motion, UCR asserts that it alleged, in paragraph 13 of the Second Amended Complaint, that Schneider conducted and engaged in business in Florida, thereby bringing him

within the ambit of Fla. Stat. § 48.193(1)(a). (Doc. 163 at 8). This is incorrect. In fact, Schneider's name is not mentioned in that paragraph. (Doc. 145 at 4). The paragraph does refer several times to activities of the Defendants, collectively, but there is no assertion that any of the Defendants (or all of them) conducted, engaged in, or otherwise did business in this state. (Doc. 145 at 4). Accordingly, Fla. Stat. §48.193(1)(a) is inapplicable.

In its response, UCR also asserts that it "alleges, in detail, that Schneider committed numerous tortious acts in Florida, *i.e.*, that Schneider converted UCR's property, misappropriated UCR's business records, and disabled UCR's computer system. *Id.* at ¶¶ 20, 27, 28." (Doc. 163 at 8). Again, for the most part, the cited paragraphs do not support UCR's position. In paragraph 20, Imperial Recovery and I Recovery are accused of committing tortious acts, but Schneider is not:

> The software installed on UCR's computer servers by Imperial Recovery and I Recovery allowed those companies to upload UCR's accounts to Imperial Recovery and I Recovery's own computers so those accounts may be managed. As set forth in detail below, however, the access Imperial Recovery and I Recovery had to UCR's servers also let them electronically move all of UCR's accounts and erase UCR's databases, depriving UCR of any ability to access, control or manage its accounts, leaving UCR unable to function with respect to its accounts.

(Doc. 145 at 6).

Paragraph 27 contains details about Schneider, including acts he performed in Florida, but no allegations that he committed tortious acts:

> For his part, Schneider accessed the World Recovery database via Schneider's computer on a daily basis through October 14, 2011, and was the primary contact for all of the database issues. From October 3, 2011 through October 14, 2011, Schneider was actually employed as IT director for World Recovery and was resident in World Recovery's office in Kansas. In February 2011, Schneider traveled to Sanford, Florida to World Recovery's location and UCR's location in Lake Mary, Florida in order to install a collection platform software data [sic], train World Recovery employees on the use of this software, and to upload the data of UCR accounts, including accounts not being collected on by Imperial Recovery,

> onto one central database. From February 2011 through October 14, 2011, Schneider was the primary point of contact for World Recovery on all software support issues regarding the UCR accounts.

(Doc. 145 at 8-9).

Finally, paragraph 28 contains assertions that Schneider's (non-tortious) acts in Florida allowed defendants to deny access, but does not accuse Schneider of converting UCR's property or misappropriating UCR's business records:

> The unification of the UCR customer information by Schneider on one data base enabled Bexten, Reeds and the other defendants to shut down UCR and World Recovery's access to the customer information with the touch of a button which occurred in October 2011 as alleged in more detail below.

(Doc. 145 at 9). It is not clear whether UCR intended, in paragraph 28, to allege that Schneider was part of the group that shut down its access to customer information. The paragraph can be read as distinguishing him from the group of "Bexten, Reeds and the other defendants" or including him within it. For purposes of resolving the instant motion, the Court will assume the latter. Accordingly, as to the allegation that he deprived UCR of access to its customer data, the Court finds that UCR has successfully pleaded facts that bring Schneider within Section 48.193(1)(b).

This shifts the burden to Schneider to produce evidence challenging the exercise of jurisdiction. In his affidavit (Doc. 162-1), Schneider denies the pertinent allegations of the Second Amended Complaint. In particular, Schneider denies any conversion of UCR's property, misappropriation of UCR's business records, or disabling of UCR's computer system. (Doc. 162-1 at 2). He also denies having interfered with UCR's business relationship with its customers (Doc. 162-1 at 3) and several times denies having disabled UCR's access to its customer accounts (Doc. 162-1 at 4). At the evidentiary hearing on the TRO, Bexten testified that he, personally,

turned off his software, which had the effect of denying UCR access to the customer data. (Doc. 45 at 123-24). As this evidence contradicts the allegations of the Second Amended Complaint regarding denial of access to customer information, Schneider has satisfied his obligation.

The burden then shifts back to UCR to submit affidavits establishing the basis for jurisdiction. *Wyndham Int'l, Inc.*, 869 So. 2d at 596. It does not appear that UCR has made an effort to do so. Although UCR cites to a number of affidavits in its response to the instant motion, it does so in an attempt to demonstrate that Schneider has sufficient minimum contacts with Florida to satisfy the requirements of due process rather than to establish that the Florida long-arm statute is satisfied. UCR cites to portions of affidavits describing Schneider engaging in various non-tortious behavior, such as traveling to Florida or serving as UCR's primary contact for all database issues. (Doc. 163 at 10-11). These affidavits do nothing to help establish that Schneider committed a tortious act within Florida so as to subject him to jurisdiction under Section 48.193(1)(b).

UCR does reference a portion of the affidavit of Leonard Potillo, UCR's principal, in which he, in UCR's words, "identifies Schneider and Owens as persons who directly downloaded the UCR customer account information and removed it from UCR's servers so that it could not access its business records to transact business." (Doc. 163 at 10). However, this is not accurate. The cited passage actually reads as follows:

> Apparently at Bexten's direction, Owens, Reeds, and/or Schneider directly downloaded UCR's customer account information and then removed it from UCR's server so that it cannot access its business records to transact business.

(Doc. 3-1 at 4). This is not an identification of Schneider as someone who shut down UCR's access; this is a guess that one of three people probably did so. That is insufficient to satisfy UCR's burden here. The Court also notes that Potillo offers nothing in his affidavit to suggest that

he had personal knowledge as to which individual actually shut down his company's access to the customer information. Thus, even if Potillo had positively identified Schneider as the culprit, that identification would not have been sufficient.

### IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 162) is **GRANTED**, and all of the claims against Defendant Shane Schneider are **DISMISSED** for lack of personal jurisdiction.

**DONE** and **ORDERED** in Orlando, Florida on May 14, 2013.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties