**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED CREDIT RECOVERY, LLC,

    Plaintiff/Counter-Defendant,

v.

                                Case No.: 6:11-cv-1714-GAP-KRS

JASON BEXTEN; IMPERIAL RECOVERY
PARTNERS, LLC; I RECOVERY LLC; REGENT
ASSET MANAGEMENT SOLUTIONS; MICHAEL
SCATA.

    Defendants.

---

## MEMORANDUM OF DECISION and

## FINAL ORDER AND INJUNCTION

    This matter came before the Court on December 10, 2013 for a bench trial on Plaintiff's Second Amended Complaint (Doc. 145), Defendant's First Amended Counterclaim (Doc.105), and the Amended Third Party Complaint (Doc. 105) pursuant to the Court's Case Management and Scheduling Order (Doc. 61) and the Amended Notice of Date Certain for Trial (Doc. 248).

    The Court received notice on December 9, 2013 that Defendant Michael Scata ("Scata") had filed a Petition for Bankruptcy under Chapter 7 of the United States Bankruptcy Code.  Accordingly all claims against him have been stayed. (Doc. 264).

    The case was called for trial at the scheduled time of 9:15 a.m. Representatives appeared on behalf of Plaintiff United Credit Recovery, LLC ("UCR" or "Plaintiff") and Third Party Defendant World Recovery Service, LLC ("WRS"), along with their counsel.  No one

1

appeared on behalf of any of the remaining defendants. The Court notes that Defendant Jason Bexten ("Bexten") attended the final pre-trial conference on November 8, 2013 by telephone and advised the Court that he would be present for trial.

I.      **Procedural Background**

On September 24, 2013, the Court entered an order (Doc. 226) directing defaults be entered by the Clerk against Defendants Imperial Recovery Partners, LLC ("Imperial"); I Recovery LLC ("I Recovery"), and Regent Asset Management Solutions ("Regent"). The Clerk entered those defaults on September 25, 2013. (Doc. 227 - 229).   Upon calling this matter for trial and acknowledging the absence of Defendant Bexten, counsel for Plaintiff and Third Party Defendant made an *ore tenus* motion for default against Bexten. (Doc. 260). The Court granted the motion, entering default against Defendant Bexten as to all of the claims asserted by him and, as to liability, in regard to all of the remaining claims asserted against him. (Doc. 265).  The matter proceeded to trial on issues of damages against all defendants (except Scata) and on Plaintiff's request for injunctive relief.

At trial, the following claims from the Second Amended Complaint (Doc. 145) were pending:

1. Plaintiff's First Claim For Relief:  Breach of Oral Contract against Imperial.
2. Plaintiff's Second Claim For Relief:  Breach of Oral Contract against I Recovery.
3. Plaintiff's Third Claim For Relief:  Unjust Enrichment against Bexten, I Recovery, and Imperial.

4.  Plaintiff's Fourth Claim For Relief: Conversion against Bexten, I Recovery, and Imperial.

5.  Plaintiff's Seventh Claim For Relief: Civil Conspiracy against all Defendants.

6.  Plaintiff's Eighth Claim For Relief: Violations Under the Computer Fraud and Abuse Act against Bexten.

At trial, Plaintiff sought the damages, injunctive and other relief pled in its Second Amended Complaint as well as the release of the $100,000 cash bond filed pursuant to Order entered on October 26, 2011 (Doc. 6).  The Court heard the testimony of Peter Rosengarten and Gregory D. Meacham.  Exhibits 24, 25, 26, 27, 39, 42, 43, 44, 45, 47, 48, 49, 50, 53, 56, 57, 58, 59, 68, 69, 94, 95, and 203 were offered and received into evidence.  By order dated December 10, 2013, the Court discharged the bond.  (Doc. 262).

## II.    Findings of Fact and Conclusions of Law

Based on the well supported allegations in the Second Amended Complaint and the testimony presented at trial,[1] the Court makes the following findings:

Regent, is a Colorado limited liability company with its principal place of business in that state.  Imperial is a Kansas limited liability company with its principal place of business in Kansas.  I Recovery is a Nevada limited liability company and has its principal place of business in that state.  Bexten, a Nevada resident, was at all relevant times a member of all

---

[1] The effect of the entry of a default is that all of the factual allegations in the Complaint are taken as true, save for the amount of unspecified damages.  Thus, if liability is well-plead in the complaint, it is established by the entry of a default. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir.1987).  If the amount of damages sought are not specified in the complaint, Plaintiff must prove up the unliquidated sums, in a hearing on damages or otherwise.  Rule 55(b)(2), Federal Rules of Civil Procedure.

three of these LLCs. Scata, a Colorado resident, was a member of Regent and Imperial. UCR, a Delaware limited liability company, has its principal place of business in Florida. This Court possesses jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

Regent entered into an oral agreement (the "Collections Agreement") to collect debt for UCR in exchange for a percentage of the amounts collected.[2] Shortly after the creation of this agreement, Bexten and Scata created Imperial, which assumed Regent's duties under the Collection Agreement. In November 2010, UCR entered into an agreement on similar terms with I Recovery. Imperial Recovery and I Recovery installed software onto UCR's computers that allowed those companies to, among other things, transfer account information regarding the debts at issue.

After an audit in April 2011, UCR discovered that Imperial had failed to remit millions of dollars it had collected, as it was required to do under the terms of the Collections Agreement. Imperial agreed to forego its commission on future collections until the shortfall was made up. Subsequently, UCR learned that Imperial was unable to pay its operating expenses. To keep Imperial in business, UCR paid rent, salaries, and health insurance expenses on behalf of Imperial.

During the time period when Imperial was foregoing its commission, UCR learned that the Defendants were improperly shifting collection accounts between Imperial and I Recovery.

---

[2] The particulars of this agreement, and the amounts collected, are described in more detail in the "Damages Analysis" section of this opinion.

4

This shifting of accounts was done to make it appear that collections had been made by I Recovery, which was still entitled to receive commissions from UCR. This discovery prompted UCR to begin preparing to sever its ties to Imperial and I Recovery. Before UCR could do so, on or about October 12, 2011, the Defendants transferred all of UCR's account information – about 2.5 million accounts -- from UCR's databases to their own and began collecting those debts for themselves (rather than on behalf of UCR). Bexten and other individuals also changed passwords and erased data files on UCR's computers, making it impossible for UCR to conduct its business for several weeks.

UCR responded by filing the instant suit and seeking a temporary restraining order requiring the Defendants to restore UCR's computer access and stop attempting to collect on the accounts. The Court granted the emergency motion, required UCR to post a $100,000 bond and held a hearing to determine whether to convert the TRO into a preliminary injunction. On the second day of the hearing, the parties reached a settlement and recited its terms in open court. Among other things, the parties agreed that while the lawsuit was pending, certain collections would be processed by Third Party Defendant World Recovery Service, LLC ("WRS"). WRS would send half of the amounts collected to UCR and half to "the Imperial group" (Doc. 46 at 6-7), without prejudice to any party's right to claim entitlement to a different share of those collections.[3]

---

[3] The parties were to memorialize the terms of their agreement in a written order for the Court to enter, but no such memorialization was ever submitted.

**A. Damages Analysis**

Under the terms of the Collection Agreement, Regent[4] (and later Imperial) would collect on debt accounts owned by the Plaintiff, remitting 68 percent of the monies collected to UCR and keeping 32 percent as its commission. (Tr. 28-29). From February 2010 through April 2011, Imperial collected $34,432,544. (Exhibits 203, 42 – 45, 47 - 50). During this period, pursuant to the terms of the Collection Agreement, Imperial should have remitted 68 percent of that sum, or $23,414,130, to UCR; however, Imperial remitted only $18,750,347 -- a difference of $4,663,783 (henceforth, the "Unpaid Collections"). (Exhibits 203 and 39).

As noted above, after the shortfall was discovered, Imperial agreed to forego its commission to make up the amount owed, and UCR agreed to pay certain expenses so as to keep Imperial in business. (Tr. 29 – 30). Under this agreement, UCR advanced payroll expenses for May 7, 2011 through September 30, 2011 in the amount of $1,703,325 (Exhibits 69, 24, 25, 26 and 27; Tr. 30 – 31); rent for July 2011 through September 2011 in the amount of $74,250 (Tr. 32 – 34; Exhibit 45); and health insurance premiums for June 2011 in the amount of $27,701. (Tr. 34, Exhibit 45). The total amount of additional contributions made by UCR to Imperial – payroll expenses, rent, and health insurance premiums -- is $1,805,276 (henceforth, the "Additional Collections"). (Exhibit 203).

---

[4] In its proposed order, UCR refers to Regent and Imperial as a single entity, suggesting that Regent should be held liable for all the obligations incurred by Imperial. Regent is named as a Defendant, along with Imperial, in UCR's civil conspiracy claim. However, there are no factual allegations in the Second Amended Complaint that Regent did anything other than enter into the initial Collection Agreement with UCR. Because of this, the Court finds that there is no basis for holding Regent liable here.

Per the agreement reached at the TRO hearing on November 4, 2011 (Doc. 35), Third-Party Defendant WRS would process certain payment plan accounts and remit half of the proceeds to UCR and half to what was referred to at the hearing as "the Imperial group," without prejudice to either side's ability to claim entitlement to a different share of those amounts. (Doc. 46 at 6-7). The members of the Imperial group were not identified at the TRO hearing, and the Plaintiff did not do so at the trial. Because the Court cannot identify the other members of the Imperial group, the Court will find that WRS remitted the proceeds at issue solely to Imperial. Pursuant to the terms of the Collection Agreement, Imperial was due only 32 percent of the collections that were processed by WRS, rather than the 50 percent it received. The additional amount due to UCR from Imperial as a result of this 18 percent overpayment totals $100,058 (henceforth, the "Overpayment"). (Exhibit 203).

Between October 13, 2011 and October 26, 2011, some or all of the Defendants prevented UCR from accessing the collection computer software, thus preventing UCR from collecting on its accounts through other collection agencies. Instead, during this time period, some of the Defendants collected on these accounts, receiving $621,542 (henceforth, the "Unauthorized Collections") that rightfully should have been paid to UCR.

The Plaintiff asserts that all of the remaining Defendants should be held jointly and severally liable for these amounts. However, the allegations of the Second Amended Complaint are that Imperial, alone, failed to remit the $4,663,783 in Unpaid Collections to UCR, and that UCR made the $1,805,276 in Additional Contributions only to Imperial. As noted, the only entity that the Court can identify to hold liable for the Overpayment is also

Imperial. There are no (well-pleaded) allegations in the Second Amended Complaint that would support holding Regent, Bexten or I Recovery liable for these obligations.[5]

The "Unauthorized Collections" are alleged to have been performed by I Recovery and Imperial, not Bexten.[6] However, UCR's seventh claim for relief was for civil conspiracy. (Doc. 145 at 24-25). In that claim, UCR alleged the existence of a conspiracy involving Bexten and the other defendants "to cause injury to UCR by misappropriation of UCR's business records, transferring UCR's Kansas and Florida accounts to Nevada and disabling UCR's computer system." (Doc. 145 at 24). UCR has not proven that the transfer of its accounts to Nevada or the disabling of its computer system caused it damage. However, the misappropriation of UCR's business records led to the "Unauthorized Collections," and UCR alleged that Bexten participated in these collections by, among other things, "blocking other otherwise interfering with UCR's access to its customer accounts [and] contacting UCR's customers and soliciting payment or settlement of their debts owned by UCR." (Doc. 145 at 17). Because of these factual allegations and the civil conspiracy count, Bexten can be held liable alongside Imperial and I Recovery for the $ 621,542 in damages resulting from the "Unauthorized Collections".[7]

---

[5] The same holds true for Scata, though his bankruptcy filing makes this a moot point.

[6] For example, the Plaintiff alleges that "[d]uring the collection activities from October 13, 2011 through the October 26, 2011 issuance of the TRO, I Recovery and Imperial Recovery collected and kept *all* proceeds, remitting none to UCR." (Doc. 145 at 14-15) (emphasis in original).

[7] At trial, in addition to the civil conspiracy claim, counsel for the Plaintiff asserted that UCR intended to proceed against Bexten on its claims for unjust enrichment, conversion, and violations of the Computer Fraud and Abuse Act. These other claims are of no assistance to UCR in attempting to hold Bexten liable for the other categories of damages besides the Unauthorized Collections: The unjust enrichment claim was made in regard to UCR's customer accounts, but the collections resulting from those accounts are not alleged to have gone to Bexten individually, and therefore he could not have been unjustly enriched by them. The conversion claim was asserted against Bexten in regard to funds and records that were the property of UCR, but the only proven damages that could have resulted from such conversion are the Unauthorized Collections. And the Court finds

Because of the way damages have been calculated in this matter, Imperial is due a setoff in the amount of commissions it agreed to waive. According to the Plaintiff's figures, between May 2011 and September 2011, collections totaled $7,650,759. This would have provided Imperial with a collection fee of $2,448,242 under the Collection Agreement. However, in an abundance of caution, the Plaintiff opted to rely on the Defendants' figures for collections during this period, which show more collections (and thus a larger commission fee earned by Imperial). According to the Defendants' figures, Imperial earned a commission of $3,011,616 during the pertinent period. This sum will be credited to Imperial.

The total damages sustained by UCR are summarized as follows:

| | |
|---|---|
| Unpaid Collections | $4,663,783 |
| Additional Contributions | $1,805,276 |
| Overpayment | $ 100,058 |
| Unauthorized Collections | $ 621,542 |
| **Subtotal** | **$7,190,659** |
| Less: Collection Fee Owed | ($3,011,616) |
| **Total** | **$4,179,043** |

(Exhibit 203).

---

that the well-pleaded allegations of the Second Amended Complaint do not establish all of the elements necessary to sustain a violation of the Computer Fraud and Abuse Act.

As discussed above, this total is owed by Imperial to UCR, while I Recovery and Bexten are liable with Imperial, jointly and severally, as to the Unauthorized Collections. The Clerk will be directed to enter judgment accordingly.

### B. Punitive Damages

The Court declines to award punitive damages.

### III. Injunctive Relief

UCR sought the following permanent injunctive relief in its Second Amended Complaint:

1. A permanent injunction enjoining Defendants and their agents, servants, employees, attorneys, subsidiaries and any other individual or entity in active concert or participation with them who receives actual notice of the order by personal service or otherwise, from (1) blocking UCR access to its customer accounts, (2) contacting UCR's customers to collect on debts owed to UCR, (3) converting payments owing to UCR and (4) interfering with UCR's contractual relations with its customers.

2. For a permanent injunction directing Defendants to: (1) return and reinstate all of UCR's business records, data and information to UCR's computer system and reinstate UCR's access to that data and information; (2) pay to UCR all funds received from UCR's customers, (3) provide UCR an accounting of each customer account that they have contacted or accepted funds from; and (4) notify all individuals and entities who may be assisting in these improper activities (knowingly or otherwise) of this injunctive relief.

3. For an order directing Defendants Bexten, Scata, I Recovery, Imperial Recovery . . . to interplead with the Court all payments they have received since October 12, 2011 in connection with consumer debts owned by UCR.

Given that UCR is being awarded damages in the sum of the improper collections it has proven, the Court sees no basis for separately requiring the payment of that sum to UCR or the interpleader of improperly collected funds. However, the remainder of the requested relief is reasonable under the circumstances of this case. Accordingly, it is hereby **ORDERED** that Defendants Imperial Recovery, LLC, I Recovery, LLC, and Jason Bexten,[8] are permanently **ENJOINED**, as follows:

1. Defendants (except for Scata) and their agents, servants, employees, attorneys, subsidiaries and any other individual or entity in active concert or participation with them who receives actual notice of this Final Order by personal service or otherwise, are permanently enjoined from (1) blocking UCR access to its customer accounts, (2) contacting UCR's customers to collect on debts owed to UCR, (3) converting payments owing to UCR and (4) interfering with UCR's contractual relations with its customers.

2. To the extent this has not already been accomplished, Defendants (except for Scata) and their agents, servants, employees, attorneys, subsidiaries and any other individual or entity in active concert or participation with them who receives actual notice of the order by personal service or otherwise shall, within 30 days of the entry of this Order: (1) return and reinstate all

---

[8] To avoid any uncertainty, the portions of this Final Order excluding Scata from the injunctive relief is due to his filing for bankruptcy protection, and nothing in this Final Order shall be deemed to allow Scata to perform any of the actions enjoined.

11

of UCR's business records, data and information to UCR's computer system and reinstate UCR's access to that data and information; (2) provide UCR an accounting of each customer account that they have contacted or accepted funds from for the time period October 13, 2011 through October 26, 2011; and (3) notify all individuals and entities who may be assisting in these improper activities (knowingly or otherwise) of this injunctive relief.

The Court reserves jurisdiction to tax costs upon proper application and to assess attorneys' fees upon proper applications.

### IV.     Entry of Judgment

In consideration of the foregoing, the Clerk is directed to enter judgment in favor of United Credit Recovery, LLC and against Imperial Recovery Partners, LLC in the amount of $3,557,501.[9]  The Clerk is further directed to enter judgment in favor of United Credit Recovery, LLC and against Imperial Recovery Partners, LLC, I Recovery, LLC, and Jason Bexten, jointly and severally, in the amount of $621,542.  Finally, the Clerk is directed to enter judgment in favor of United Credit Recovery, LLC and Third Party Defendant World Recovery Service, LLC on all claims asserted against them by Defendants.[10]

### V.     Final Judgment Against Fewer Than All Parties Under Fed. R.Civ.P. 54(b)

The Court acknowledges that due to the Chapter 7 bankruptcy filing of Scata, fewer than all of the parties will have judgment entered against them. Pursuant to Fed.R.Civ.P. 54(b),

---

[9] In case it is not obvious, this amount is the difference between the total owed by Imperial on its own ($4,179,043) and the amount it owes, jointly and severally, with I Recovery and Bexten ($621,542).
[10] Scata had no claims against UCR or WRS.

the Court expressly determines that, for the reasons set forth herein, there is no just reason for delay and that judgment consistent with this Order shall be entered by the Clerk of the Court.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 17, 2013.

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies Furnished to:

Counsel of Record
Unrepresented Party